McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Ben Nicholson, #239893
*ben.nicholson@mccormickbarstow.com*
Christopher A. Kent, #332892
*christopher.kent@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone: (559) 433-1300
Facsimile: (559) 433-2300

Rapport and Marston
Lester J. Marston, #081030
*marstonl@pacbell.net*
405 West Perkins Street
Ukiah, CA 95482
Telephone: (707) 462-6846
Facsimile: (707) 462-4235

Attorneys for Plaintiff Table Mountain Rancheria dba Eagle Springs Golf & Country Club

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

TABLE MOUNTAIN RANCHERIA, a federally-recognized sovereign Indian Tribe dba Eagle Springs Golf & Country Club,

Plaintiff,

v.

YAMAHA GOLF-CAR COMPANY. a Georgia Corporation; and CART STAR MOTORS, LLC, a California limited liability company;,

Defendant.

Case No.

**COMPLAINT FOR:**

**(1) Negligence**
**(2) Breach of Contract**
**(3) Breach of Express Warranty**
**(4) Breach of Implied Warranty of Fitness**
**(5) Intentional Misrepresentation**
**(6) Negligent Misrepresentation**
**(7) Violation of 25 USC §264**
**(8) Declaratory and Injunctive Relief**

## INTRODUCTION

1. The subject lawsuit arises out of Defendants selling a defective fleet of 80, electric golf carts to Table Mountain Rancheria dba Eagle Springs Golf & Country Club ("Eagle Springs"), a luxury golf course located in Fresno County without obtaining a Federal Indian Traders license in violation of 25 U.S.C. §261, et seq. In

breach of the parties' contract and the express and implied warranties given by Defendants and contrary to numerous misrepresentations made by Defendants, the golf carts suffered from significant defects, including but not limited to, not holding a charge long enough to complete a round of golf, routinely stalling in the middle of rounds leaving golfers stranded on the course and inoperable geo-fencing that allowed the golf carts to be driven into restricted and sensitive areas.

2. The damages caused to Eagle Springs by the defective and unreliable fleet of golf carts was extensive. By way of this lawsuit, Plaintiff is seeking damages, including for lost revenues, loss of use of the golf course, reputational harm, rental costs for replacement carts, and property damage caused by the defective carts driving in prohibited and sensitive areas. Most significantly, for many months and in the midst of a golf boom during the COVID-19 pandemic when its competitors were filling all (100%) of their available tee times, Eagle Springs could only offer approximately half (~50%) of its available tee times to golfers as it did not have enough operable carts to offer its full allotment.

## PARTIES

3. TABLE MOUNTAIN RANCHERIA, a federally-recognized sovereign Indian Tribe dba EAGLE SPRINGS GOLF & COUNTRY CLUB ("Eagle Springs" or the "Tribe") is and at all times relevant hereto has been a Tribal business entity existing pursuant to Tribal law and conducting business in the State of California, County of Fresno. Table Mountain Rancheria, a federally-recognized Indian Tribe, owns, operates and does business as Eagle Springs Golf & Country Club, a luxury golf course in Fresno County.

4. Eagle Springs is informed and believes, and thereon alleges, that Defendant Yamaha Golf-Car Company (hereinafter "Yamaha") is now, at all times alleged herein was, a corporation organized and existing pursuant to the laws of the State of Georgia and doing business in the State of California, including the business in Fresno County that is the subject of this dispute. Specifically, Yamaha is in the

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

business of designing, manufacturing, and selling golf carts. At issue in this lawsuit is Yamaha's negligent design, manufacturing, and sale of the golf carts purchased by Eagle Springs as well as Yamaha's breach of contract and related tortious conduct. Eagle Springs is informed and believes and thereon alleges that Yamaha has not been appointed as a trader to Table Mountain Rancheria or any other Indian tribe and was not permitted to sell the goods that are the subject of this lawsuit to the Tribe under 25 U.S.C. §261, et seq.

5. Eagle Springs is informed and believes, and thereon alleges, that Defendant Cart Star Motors, LLC (hereinafter "Cart Star") is now, at all times alleged herein was, a limited liability company organized and existing pursuant to the laws of the State of California and doing business in Fresno County, including the business that is the subject of this dispute. Specifically, Cart Star is a supplier and retailer of Yamaha golf carts, including the fleet of golf carts sold to Eagle Springs, and is an agent of Yamaha. Eagle Springs is informed and believes and thereon alleges that Cart Star has not been appointed as a trader to Table Mountain Rancheria or any other Indian tribe and was not permitted to sell the goods that are the subject of this lawsuit to the Tribe under 25 U.S.C. §261, et seq.

6. Eagle Springs is informed and believes, and thereon alleges that each Defendant was a principal, agent, or employee of each of the remaining defendants, and, in so doing the things herein alleged, was acting as such principal, or within the course and scope of such agency and took some part in the acts and/or omissions set forth in this Complaint.

**JURISDICTION**

7. This Court's jurisdiction over the Tribe's claims is based upon the following: (a) U.S.C § 1331, in that this action arises under the Constitution and laws of the United States, specifically, the Indian Trader Statutes, 25 U.S.C. §§ 261 et. seq.; and (b) 28 U.S.C. § 1362, in that the Tribe is a federally recognized Indian tribe asserting that the Defendants' actions violate the Constitution and laws of the United

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

States, including federal common law.

## ANCILLARY JURISDICTION

8. This Court has supplemental jurisdiction over the Tribe's state law-based causes of action against the Defendants, pursuant to 28 U.S.C. § 1367, in that the Tribe's state law based claims arise out of the same common facts as the Tribe's federal law claims alleged against the Defendants.

## VENUE

9. Venue is proper in this Court, pursuant to 28 U.S.C. §1391, in that: (a) the Defendants are located within this District; and (b) a substantial part of the events or omissions giving rise to the Tribe's claims occurred in this District.

## CASE OR CONTROVERSY

10. An actual case or controversy exists between the Tribe and the Defendants, in that the Tribe asserts that the Defendants had an obligation to obtain an Indian Traders License from the Bureau of Indian Affairs, pursuant to 25 U.S.C. §§ 261 et. seq., prior to selling the golf carts to the Tribe and therefore, the Defendants are estopped from obtaining any relief against the Tribe under the golf cart sales contract at issue in this case, while the Defendants assert that they were not required to obtain an Indian Traders License to make the sale to the Tribe.

## BACKGROUND ALLEGATIONS

11. In or about early 2020, Eagle Springs was in the market to replace its fleet of 80 electric golf carts. Eagle Springs received multiple bids to replace its fleet, including a bid from Defendants.

12. As part of their bid, Defendants represented to Eagle Springs that:

a. Yamaha had developed a new Trojan AGM Battery option to be installed in the new 2020 Eagle Springs' golf cart fleet that was capable of running the carts for 36 holes per day at Eagle Springs;

b. The carts' Trojan AGM batteries would be "maintenance free" and last for five (5) years, backed by a five year/50,000 amp hour warranty; and

c. Through Defendants' GPS program, known as YAMATRACK,

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

> the carts would contain certain control functions including, but not limited to: (1) geo-fencing to control speed and cart location on the golf course such that carts would be disabled when being driven in restricted areas on the Eagle Springs' course; and (2) a shutdown/lockdown feature that would provide security and limit cart accessibility.

13. Delivery of the Defective Carts was scheduled for April 2020.

14. Unfortunately, the Defective Carts did not arrive on the scheduled delivery date. Instead, 40 of the Defective Carts were delivered in August 2020 (i.e., four months late) and the remaining 40 carts were delivered in September 2020 (i.e., five months late). Prior to selling and delivering the Defective Carts to the Tribe, the Defendants, and each of them, never made application to nor obtained a Federal Indian Traders license from the Bureau of Indian Affairs ('BIA"). Nor did the BIA approve the selling price of the Defect Carts as being a fair price or that the Defective Carts were fit for the purpose for which they were intended.

15. When the Defective Carts did finally arrive, half of them were missing the custom seats, logos and other features that Eagle Springs paid for.

16. In addition, despite numerous requests from Eagle Springs before delivery, 20 of the carts arrived with charging cords that were too short to be used in Eagle Springs' cart barn and had to be replaced.

17. Shortly after delivery of the Defective Carts, Eagle Springs learned that the promised "geo-fencing" shut down feature provided through YAMATRACK did not work and the Defective Carts could be driven anywhere on or around the Eagle Springs course, including into restricted areas. Without the "geo-fencing" shut down feature, golfers routinely drove the carts into restricted or sensitive areas causing property damage.

18. Defendants promised a fix to the "geo-fencing" shut down issue. Specifically, Defendants promised that an update in November 2020 would correct this issue. However, Defendants never corrected the problem and no update ever occurred.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

19. To make matters worse, in November 2020, a handful of the Defective Carts began failing to complete the full 18 holes at Eagle Springs, let alone the 36 holes per day Defendants promised. The Trojan AGM batteries, which instruments showed were fully charged when the Defective Carts left the cart barn, regularly died mid-round and left golfers stranded on the course.

20. Defendants attempted to fix the issue, but could not. By December 2020, 14 of the 80 carts would not complete 18 holes and Defendants remained unable to identify why the Defective Carts were experiencing these failures.

21. In February 2021, Yamaha removed Cart Star as the service provider and replaced them with a third-party provider. However, neither Yamaha nor the third-party provider were able to identify a solution to the ever-increasing issues with the Defective Carts.

22. By March 2021, ~40 of the then six-month old carts—i.e., half of the fleet—would not complete 18 holes.

23. In April 2021, the new third-party provider Yamaha replaced Cart Star with replaced the batteries in 35 of the carts with new Yamaha batteries. However, despite these repairs and replacements, the issues persisted and by June 2021, 20 of the carts would not complete 18 holes. By September 2021, 29 of the carts would not complete 18 holes.

24. Around this time, Yamaha informed Eagle Springs that, without justification, Yamaha would no longer honor the warranty on the Defective Carts and Eagle Springs would need to fix the Defective Carts itself.

25. By the end of October 2021, 51 of the 80 carts were not working properly. Given that Eagle Springs only had a fraction of its fleet operating, Eagle Springs was forced to incur the additional expense of bringing in rental carts from outside vendors on a weekly basis to attempt to subsidize the depleted fleet. Renting replacement carts was not only expensive, but there was also not enough of them to replace the many unusable carts in the fleet.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

26. Throughout the entire ordeal, Eagle Springs attempted to mitigate its damages. This included renting golf carts from third parties, switching out the semi-operable golf carts after 9 holes for another semi-operable golf cart and having protocols in place to tow stranded golfers when the carts broke down, which happened multiple times per day.

27. However, even with the rental carts, Eagle Springs only had a partial fleet of working carts. As such, Eagle Springs was forced to reduce the number of rounds played per day by approximately 50%. In effect, Eagle Springs could offer only approximately half of the tee times it otherwise would have, and it lost the use of its course and all the revenue associated with the other half of the tee times it could not offer, including but not limited to: green fees, cart rental fees, food and drink sales, and merchandise.

28. While these efforts mitigated Eagle Springs' damages somewhat, none of them are what would be expected at a luxury golf course like Eagle Springs. Between not having enough carts, having carts that regularly broke down, not having sufficient tee times and having to employ mitigation measures that are not consistent with operating a luxury golf course (e.g., asking players to switch carts after nine holes), the Defective Carts have greatly harmed Eagle Springs' reputation in the golfing community.

29. During the same year-plus time period Eagle Springs was dealing with the Defective Carts, golf experienced an unprecedented boom in interest. Golf courses nationwide and throughout the Central Valley have consistently filled all available tee times.

30. As a result of the Defective Carts and the actions and/or omissions of Defendants, and each of them, Eagle Springs has been unable to operate at full capacity and has been unable to capitalize on the increase of players and interest amongst the golfing community.

31. Despite its representations to the contrary, Eagle Springs has learned that

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

Yamaha debuted a lithium battery in its golf carts in 2022.

**FIRST CLAIM FOR RELIEF**

**(Negligence — Against All Defendants)**

32. Eagle Springs hereby incorporates the allegations in paragraphs 1 through 31 as though fully set forth herein verbatim.

33. Defendants designed, manufactured, sold, distributed, and serviced the Defective Carts that are the subject of this dispute. At all relevant times, Defendants owed Eagle Springs a duty of care to design, manufacture, distribute, and service a fleet of 80 golf carts for Eagle Springs.

34. Defendants breached such duty by negligently designing, manufacturing, selling, distributing and servicing the fleet of 80 golf carts sold to Eagle Springs by Defendants. More specifically, Defendants breached the applicable standard of care by, among other things: (1) failing to design golf carts that could function with the capabilities as represented by Defendants, including but not limited to defectively designing the geo-fencing GPS system and power supply; (2) failing to manufacture golf carts that could function with the capabilities as represented by Defendants, including but not limited to the geo-fencing GPS capabilities and the 36-hole functional power supply; (3) failing to properly service and address the issues raised by Eagle Springs in regards to the Defective Carts; and (4) failing to appropriately recall and/or retrofit the Defective Carts after Defendants became aware of the multiple issues arising from Defendants' defective product(s).

35. As a direct and legal result of the negligence of Defendants, and each of them, Eagle Springs sustained property damage to its golf course and was forced to reduce its tee times by 50% at a time when demand for tee times at luxury golf courses was growing exponentially. Between not having enough carts, having carts that regularly broke down, not having sufficient tee times and having to employ mitigation measures that are not consistent with operating a luxury golf course, the Defective Carts have greatly harmed Eagle Springs' reputation in the golfing community and

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

caused further losses to Eagle Springs.

36. As a further direct and legal result of the negligence of Defendants, and each of them, Eagle Springs was forced to pay rental expenses to outside vendors to attempt to subsidize its depleted fleet to service its reduced clientele.

WHEREFORE, Eagle Springs prays for relief as hereinafter set forth below.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract — Against All Defendants)

37. Eagle Springs hereby incorporates the allegations in paragraphs 1 through 36 as though fully set forth herein verbatim.

38. Eagle Springs and Defendants entered into an agreement whereby Defendants agreed to design, manufacture, and provide a functional fleet of 80 new Yamaha golf carts to Eagle Springs (the "Agreement"). The Agreement expressly provided that the carts would include Trojan AGM batteries that were "Maintenance Free" and geo-fencing. Defendants also agreed that the carts would be capable of completing 36 holes per day at Eagle Springs.

39. Pursuant to the Agreement, Eagle Springs paid the full price for the custom, 80-cart fleet and fully performed all other conditions required of it by the Agreement.

40. Defendants, and each of them, breached the Agreement, by among other things: (1) providing carts that were not "Maintenance Free"; (2) providing carts that were not capable of completing 36 holes per day; (3) providing carts that did not include geo-fencing; (4) failing to identify and address the issues with the Defective Carts; and (5) failing to honor the five-year warranty associated therewith.

41. As a direct, proximate and foreseeable result of Defendants' breach of the Agreement, Eagle Springs sustained significant property damage to its luxury golf course and was forced to reduce its tee times by fifty percent at a time when demand for such tee times was growing rapidly. Between not having enough carts, having carts that regularly broke down, not having sufficient tee times and having to employ

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

mitigation measures that are not consistent with operating a luxury golf course, the Defective Carts have greatly harmed Eagle Springs' reputation in the golfing community.

42. As a further direct and legal result of Defendants' breach of contract, Eagle Springs was forced to pay rental expenses to outside vendors in an attempt to subsidize its depleted fleet to service its reduced clientele.

43. As a further direct and legal result of Defendants' breach of contract, Eagle Springs has suffered, and continues to suffer, lost profits due to being forced to reduce its operational capacity.

WHEREFORE, Eagle Springs prays for relief as hereinafter set forth below.

## THIRD CLAIM FOR RELIEF

### (Breach of Express Warranty — Against All Defendants)

44. Eagle Springs hereby incorporates the allegations in paragraphs 1 through 43 as though fully set forth herein verbatim.

45. Eagle Springs and Defendants entered into the Agreement, which included an express five-year, 50,000 Amp/hour Warranty on the batteries in the Defective Carts. In addition, Defendants, and each of them, warranted that Defendants' golf carts would be capable of completing 36 holes a day and that each cart would be equipped with a functional geo-fencing GPS System that would prevent the carts from being driven into restricted zones.

46. In breach of these warranties, the Defective Carts did not perform as warrantied. Namely, due to the batteries, the vast majority of the 80-cart fleet were unable to complete 18 holes, let alone the 36 holes that Defendants advised the carts could complete per day. Moreover, the YAMATRAK geo-fencing system did not operate as described.

47. Eagle Springs took reasonable steps to notify Defendants of these issues in a timely manner.

48. Nevertheless, Defendants failed to repair the Defective Carts as required

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

by the warranty, including failing to repair the batteries or the geo-fencing system. In fact, without justification, at one point Defendants informed Eagle Springs that Defendants would no longer honor the warranty and that Eagle Springs was responsible for repairing the Defective Carts itself. Defendants later relented and acknowledged that the warranty would be honored.

49. As a direct, proximate and foreseeable result of Defendants' breach of the express warranty, Eagle Springs sustained significant property damage to its luxury golf course and was forced to reduce its tee times by 50% at a time when demand for golf was growing exponentially. Between not having enough carts, having carts that regularly broke down, not having sufficient tee times and having to employ mitigation measures that are not consistent with operating a luxury golf course, the Defective Carts have greatly harmed Eagle Springs' reputation in the golfing community.

50. As a further direct and legal result of Defendants' breach, Eagle Springs was forced to pay rental expenses to outside vendors in an attempt to subsidize its depleted fleet to service its reduced clientele.

51. As a further direct and legal result of Defendants' breach, Eagle Springs has suffered, and continues to suffer, unrealized profits due to being forced to reduce its operational capacity.

52. Defendants' breach of the warranties described above was a substantial factor in causing the aforementioned harm suffered by Eagle Springs.

WHEREFORE, Eagle Springs prays for relief as hereinafter set forth below.

## FOURTH CLAIM FOR RELIEF

**(Breach of Implied Warranty of Fitness — Against All Defendants)**

53. Eagle Springs hereby incorporates the allegations in paragraphs 1 through 52 as though fully set forth herein verbatim.

54. Eagle Springs and Defendants entered into an agreement whereby Eagle Springs purchased a fleet of 80 golf carts, manufactured and distributed by

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

Defendants.

55. At the time of purchase, Defendants, and each of them, knew or had reason to know that Eagle Springs intended to use the Defective Carts on its golf course. More specifically, Defendants knew that Eagle Springs intended each cart to be used for 36 holes per day and that each cart needed geo-fencing to prevent it from being driven into restricted and/or sensitive areas.

56. At the time of purchase, Defendants, and each of them, knew or had reason to know that Eagle Springs was relying on Defendants' skill and judgment to select or provide carts suitable for this purpose and that Defendants did so represent through its bid that such carts were suitable for this purpose.

57. The carts provided by Defendants were not fit for their particular purpose as they could not complete 18 holes, let alone the 36 holes they were represented to be capable of, and the geo-fencing did not work.

58. As a direct, proximate and foreseeable result of Defendants' breach of warranty, Eagle Springs sustained significant property damage to its luxury golf course and was forced to reduce its player capacity and tee times by 50% at a time when demand from tee times at such a luxury golf course was growing exponentially. Between not having enough carts, having carts that regularly broke down, not having sufficient tee times and having to employ mitigation measures that are not consistent with operating a luxury golf course, the Defective Carts have greatly harmed Eagle Springs' reputation in the golfing community.

59. As a further direct and legal result of Defendants' breach, Eagle Springs was forced to pay rental expenses to outside vendors in an attempt to subsidize its depleted fleet to service its reduced clientele.

60. As a further direct and legal result of Defendants' breach, Eagle Springs has suffered, and continues to suffer, unrealized profits due to being forced to reduce its operational capacity.

61. Defendants' breach of the implied warranty was a substantial factor in

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

causing the aforementioned harm suffered by Eagle Springs.

WHEREFORE, Eagle Springs prays for relief as hereinafter set forth below.

**FIFTH CLAIM FOR RELIEF**

**(Intentional Misrepresentation — Against All Defendants)**

62. Eagle Springs hereby incorporates the allegations in paragraphs 1 through 61 as though fully set forth herein verbatim.

63. At all times relevant hereto, Defendants, and each of them, represented to Eagle Springs, among other things, that the Defective Carts would have a geo-fencing capability and a 36-hole battery life. In reality, none of carts exhibited the geo-fencing functionality and a vast majority of the fleet was unable to complete 18 holes as a result of the defective batteries, let alone the 36 holes Defendants promised.

64. In addition, when Eagle Springs asked if Yamaha intended to move to a lithium battery, it responded that it did not.

65. Defendants, and each of them, knew that these representations were false and were aware that such representations were false when Defendants made them to Eagle Springs. Specifically, Eagle Springs is informed and believes that similar problems plagued similar Yamaha golf carts at other courses and that Defendants had addressed these issues at other golf courses, yet Defendants made these misrepresentations to Eagle Springs anyway. Moreover, despite its representation that it would not be switching to a lithium battery, Yamaha did begin using lithium batteries in 2022.

66. Defendants, and each of them, made such representations knowingly and/or recklessly without regard for the truth.

67. Defendants, and each of them, intended that Eagle Springs rely on these representations to induce Eagle Springs to purchase the Defective Carts.

68. Eagle Springs did reasonably rely on Defendants' representations and such representations were a deciding factor in Eagle Springs' selection of Defendants as the provider of its 2020 golf cart fleet.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

69. As a result therefrom, Eagle Springs has suffered harm.

70. Eagle Springs' reliance on Defendants' representations was a substantial factor in causing the harm suffered by Eagle Springs resulting from the Defective Carts.

71. Defendant acted fraudulently, oppressively and maliciously by misrepresenting to Eagle Springs that: (1) the Defective Carts were suitable for the Eagle Springs golf course when it knew they were not; (2) the Defective Carts would have geo-fencing when they did not; and (3) Yamaha would not be switching to a lithium battery.

WHEREFORE, Eagle Springs prays for relief as hereinafter set forth below.

## SIXTH CLAIM FOR RELIEF

### (Negligent Misrepresentation — Against All Defendants)

72. Eagle Springs hereby incorporates the allegations in paragraphs 1 through 71 as though fully set forth herein verbatim.

73. At all times relevant hereto, Defendants, and each of them, represented to Eagle Springs, among other things, that the Defective Carts would have a geo-fencing capability and a 36-hole battery life. In reality, none of carts exhibited the geo-fencing functionality and a vast majority of the fleet was unable to complete 18 holes as a result of the defective batteries, let alone the 36 holes Defendants promised.

74. Defendants, and each of them, had no reasonable grounds to believe that the representations made were true and/or were aware that such representations were false when Defendants made them to Eagle Springs. Specifically, Eagle Springs is informed and believes that similar problems plagued the Yamaha golf cart and that Defendants had addressed these issues at other golf courses, yet Defendants made these misrepresentations to Eagle Springs anyway.

75. Defendants, and each of them, made such representations knowingly and/or recklessly without regard for the truth.

76. Defendants, and each of them, intended that Eagle Springs rely on these

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

representations to induce Eagle Springs to select their bid to provide a fleet of 80 golf carts to Eagle Springs.

77. Eagle Springs did reasonably rely on Defendants' representations and such representations were a deciding factor in Eagle Springs' selection of Defendants as the provider of its 2020 golf cart fleet.

78. As a result therefrom, Eagle Springs has suffered harm.

79. Eagle Springs' reliance on Defendants' representation was a substantial factor in causing the harm suffered by Eagle Springs resulting from the Defective Carts.

WHEREFORE, Eagle Springs prays for relief as hereinafter set forth below.

**SEVENTH CLAIM FOR RELIEF**

**(Violation Of 25 U.S.C. §264 — Against All Defendants)**

80. Eagle Springs hereby incorporates the allegations in paragraphs 1 through 79 as though fully set forth herein verbatim.

81. 25 U.S.C. §264 provides that "[a]ny person other than an Indian of the full blood who shall attempt to reside in the Indian country, or on any Indian reservation, as a trader, or to introduce goods, or to trade therein, without [a license provided for under 25 U.S.C. §261, et seq.], shall forfeit all merchandise offered for sale to the Indians or found in his possession, and shall moreover be liable to a penalty of $500."

82. At all times relevant hereto, Defendants did not possess an Indian Trader's License as provided for under 25 U.S.C. §261, et seq.

83. Notwithstanding Defendants' failure to obtain a license, they did introduce goods and trade them with the Tribe in violation of 25 U.S.C. §264.

WHEREFORE, Eagle Springs prays for relief as hereinafter set forth below.

**EIGHTH CLAIM FOR RELIEF**

**(Declaratory and Injunctive Relief — Against All Defendants)**

84. Eagle Springs hereby incorporates the allegations in paragraphs 1

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

through 83 as though fully set forth herein verbatim.

85. 25 U.S.C. §264 provides that "[a]ny person other than an Indian of the full blood who shall attempt to reside in the Indian country, or on any Indian reservation, as a trader, or to introduce goods, or to trade therein, without [a license provided for under 25 U.S.C. §261, et seq.], shall forfeit all merchandise offered for sale to the Indians or found in his possession, and shall moreover be liable to a penalty of $500."

86. At all times relevant hereto, Defendants did not possess an Indian Trader's License as provided for under 25 U.S.C. §261, et seq.

87. Notwithstanding Defendants' failure to obtain a license, they did introduce goods and trade them with the Tribe in violation of 25 U.S.C. §264.

88. In light of Defendants failure to obtain a license as provided for under 25 U.S.C. §261, et seq., Defendants should be estopped and enjoined from enforcing the contract terms against the Tribe.

89. Unless Defendants are restrained from enforcing the contract terms against the Tribe, the Tribe shall suffer irreparable harm as the federal laws enacted to ensure that goods sold to the Tribe are of the kind, quantity and price at which goods should be sold to Indians will have been subverted.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for judgment against defendants, and each of them as follows:

1. For compensatory, general, economic, incidental, consequential, and special damages according to proof at trial excepting therefrom the amount of the purchase price for the Defective Carts;

2. For exemplary and punitive damages according to proof at trial;

3. For penalties pursuant to 25 U.S.C. §264;

4. For recovery of lost revenue and the loss of use of the golf course according to proof at trial;

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

4. For property damage to the golf course according to proof at trial;

5. For reimbursement of rental expenses incurred by Eagle Springs for replacement golf carts necessitated by Defendants acts and/or omissions according to proof at trial;

6. For reputational harm;

7. For recovery of costs of suit according to proof at trial;

8. For prejudgment interest;

9. For recovery of reasonable attorney's fees according to proof at trial;

10. For a determination that Defendants, who were unlawfully engaged in introducing and selling goods without an Indian Trader's license, be restrained from enforcing the terms of the agreement against the Tribe;

11. For a declaration from the Court that the sales contract between the Defendants and the Tribe is not enforceable against the Tribe; and

12. For such other and further relief as the court deems proper.

Dated: October 31, 2022

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP

By: ______________________
Ben Nicholson
Christopher A. Kent
Attorneys for Table Mountain Rancheria dba Eagle Springs Golf & Country Club

083030-000020 8727902.1

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

# EXHIBIT "A"

**Mike Best**

**From:** Mike Pavao <mike_pavao@yamaha-motor.com>
**Sent:** Monday, January 6, 2020 3:37 PM
**To:** Mike Best
**Subject:** RE: Checking In

Mike-

Thanks for the quick response.

As a direct answer, Yamaha is going to be going with an AGM or Glass Mat battery, not Lithium. Yamaha has done extensive research and the AGM battery has the same qualities as Lithium, it is Maintenance Free, comes with a 5 yr, 50,000 Amp Hour Warranty, which is basically the life of any lease, and is more cost effective than the Lithium option.

We do have the option of Geofencing on our GPS system, and we can discuss that further when we meet.

I am traveling to LA tomorrow then up to the Bay Area Wednesday, but if Friday is open we can meet then. IF not, let me know what our schedule looks like next week and I will make sure I am available.

Thanks again and look forward to meeting up real soon. Have a great week!

*Mike Pavao*
*National Account Manager*
*Clovis, CA 93619*
*559) 320-6046*
Mike_Pavao@yamaha-motor.com
**The Official Golf Car of the NGCOA**

YAMAHA GOLF-CAR COMPANY

**From:** Mike Best <mbest@EagleSpringsGCC.com>
**Sent:** Monday, January 6, 2020 9:06 AM
**To:** Mike Pavao <mike_pavao@yamaha-motor.com>
**Subject:** RE: Checking In

Mike,

[illegible]

[illegible]

Let me know your availability so that we can schedule a time to meet.

Thank you,

Mike Best
Golf Operations Manager
[illegible]
[illegible]
mbest@eaglespringsgcc.com

21722 Fairway Oaks Lane • Friant, CA 93626
559.325.8900

**From:** Mike Pavao [mailto:mike_pavao@[illegible]]
**Sent:** Sunday, January 05, 2020 8:36 PM
**To:** Mike Best <mbest@EagleSpringsGCC.com>
**Cc:** Brian Jones <[illegible]>
**Subject:** Checking In

Mike-

Good evening, hope you and your family had a great holiday season.

I wanted to check in and see what your availability was the next week or two as I will be around Fresno before the PGA and GIS Shows in Florida.

I hope all went well with the DEMO and I have some new information about our Maintenance Free Battery Options, so once you have some time, I would love to come back out to the course and have some discussions about our offerings and the accessories and colors the course may be interested in.

Thanks Mike, and have a great week!

*Mike Pavao*
*National Account Manager*
*Clovis, CA 93619*

**Mike Best**

---

**From:** Mike Best
**Sent:** Monday, January 6, 2020 9:06 AM
**To:** 'Mike Pavao'
**Subject:** RE: Checking In

Mike,

Thank you for checking in. I would like to get together with you to discuss the Yamaha cart in more detail. One of the questions from my Directors is will Yamaha be coming out with a Lithium Battery next year. Since this is where tech is taking the other golf cart companies. They don't want to buy the fleet and find out that next year there is something new, please clarify this for me. Also, they want more info on the GPS and if it offers the Geo Fencing the ability to have course boundaries.

Yamaha is still very much in the race for the new fleet, it is between you and EZ GO. The new Club Car [illegible], which is a surprise to me but they didn't like its ride!

Let me know your availability so that we can schedule a time to meet.

Thank you,

Mike Best
Golf Operations Manager
(559) 325-8900
(559) 785-9146 cell
mbest@eaglespringsgcc.com

Eagle Springs Golf & Country Club
21722 Fairway Oaks Lane • Friant, CA 93626
559.325.8900

**From:** Mike Pavao [mailto:mike_pavao@yamaha-motor.com]
**Sent:** Sunday, January 05, 2020 8:36 PM
**To:** Mike Best <mbest@EagleSpringsGCC.com>
**Cc:** Brian Jones <Brian.Jones@cartstarmotors.com>
**Subject:** Checking In

Mike-

Good evening, hope you and your family had a great holiday season.

TMR00003

# EXHIBIT "B"



# PRICING DETAILS

| [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|
| **Fleet Vehicle - AGM Batteries**<br>2021 AC Fleet - Moonstone Color | $6,100 | , 80 | $488,000 |
| **UMAX 1 EFI - Range Vehicle**<br>Free Use No Charge | $0 | 1 | $0 |
| 2020 AFI - Marshall Vehicle | $0 | 2 | $0 |
| **SUBTOTAL** | | | **$488,000** |
| **DISCOUNT (-$90,000)** | | | **-$90,000** |
| **TOTAL** | | | **$398,000** |

*Does not include any applicable taxes.*

Star Motors will also give Eagle Springs Golf & Country Club 2 Free EFI Marshall Unit and 1 UMAX 1Range Vehicle at no additional charge.

Cart star Motors will give Eagle Springs Golf & Country Club $1500 per car trade in value for 60 2014 Ez-Go RXV Electric Fleet car, totaling $90,000. This amount has been applied against the purchase price above, noted as "Discount". All trade in cars must be in running condition and all chargers in working order. Eagle Springs Golf & Country Club will provide Cart Star Motors with a Serial Number List.

*Delivery May / June 2020 depending on AGM Availability*
*Check Due upon Delivery of Fleet*

Price Above Includes Trojan AGM Maintenance Free Batteries
5 Year / 50,000 amp hr warranty

MOTIVE AGM

John L Burrough

TMR00004



# LEASE PRICING DETAILS

| [illegible] | [illegible] | [illegible] | [illegible] |
| --- | --- | --- | --- |
| YamaTrack GPS<br>10.1" In-Dash Display | $32 | 80 | $2,560 |
| **TOTAL** | | | **$2,560** |

*Does not include any applicable taxes.*

60 Month Continuous Payment Lease

At the end of the five-year term, YamaTrack equipment is returned to Yamaha with the option to install exciting new technology that will be available at that time.

John L Burroughs



# PROPOSAL ACCEPTANCE & DETAILS

ADDITIONAL BENEFITS:

- Factory Fleet Direct Service will support course service needs on an as-needed basis.
- Your current fleet of 60 golf cars will be sold as-is.
- Early Roll Option: Upon entering into the last year of the lease with the preferred financial institution, if all terms and conditions of the lease have been satisfactorily met, Cart Star Motors will grant customer the option of rolling into a new fleet of Yamaha golf cars. The new agreement must be with Cart Star Motors and will be subject to their credit approval process. The new payment will be based upon current fleet condition, product pricing, and interest rates at that time.
- Eagle Springs Golf and Country Club will have the opportunity to purchase any number of the vehicles put forth in the proposal upon satisfactory completion of the lease term.

---

The preceding quotation does not include any applicable taxes or insurance and is subject to the final approval of Cart Star Motors and Yamaha Golf-Car Company; additional documentation to follow. This quotation is valid for (30) days and is subject to change beyond that date. Furthermore, this proposal constitutes the entire understanding and agreement amongst the parties, whether oral or in writing. Neither party has made any further representations or promises to the other with respect to the subject matter of this agreement, except as set forth in this agreement. This agreement supersedes any previous agreements made between parties and is confidential in nature.

**Brian Jones**
District Sales Manager - Northern Cal

Brian Jones

**Mike Best**
Eagle Springs Golf and Country Club

Mike Best

John L. Burrough
Eagle Springs Golf and Country Club

John L Burrough

TMR00006



# TERMS AND CONDITIONS FOR RETURNING VEHICLES OR TRADES

Sole Responsibility, if applicable:

Eagle Springs Golf and Country Club agrees to accept sole responsibility for any loss or damage to its returned cars beyond ordinary wear due to normal use. The returned cars must meet the following conditions:

1. All cars must be free of all liens and encumbrances.
2. All cars must be capable of running at least nine (9) holes of golf.
3. All cars must be the same quantity and year model as originally evaluated.
4. All cars must be clean, and free of trash, scorecards, pencils, tees, etc.
5. All cars must have a working charger.
6. All cars must have four (4) serviceable tires that retain proper air pressure.
7. All cars must steer properly in all directions.
8. All batteries must be free of corrosion, and properly filled with water.

Furthermore, Eagle Springs Golf and Country Club understands and agrees to further charges being assessed if the below conditions are found upon Yamaha Golf-Car Company's inspection of the returned cars:

1. Severely damaged or missing chargers
2. Inoperable cars
3. Minor damage (damage to bodies, bumpers, or seats)
4. Major damage (frame damage, wrecked cars, etc.)

MIKE BEST

EAGLE SPRINGS GOLF AND COUNTRY CLUB



Dear Mike,

On behalf of the entire team at the Cart Star Motors, I would like to express my sincerest gratitude for the opportunity to submit this proposal for a new fleet of Yamaha golf cars at Eagle Springs Golf and Country Club. Consistently ranked among the most beloved brands in the world, Yamaha prides itself on providing superior engineering and efficiency in its vehicles, and we believe we have a top-quality product and image that would align with that of your fine Club. We hope that Yamaha will be the easiest and best decision you ever make.

Since the launch of "The Drive" model golf car in late 2006, Yamaha has been on a steady climb to the top of the industry, gaining more than 15% market share over that span. The legacy and growth continues with the Drive, an evolution which maintained all the popular features of 'The Drive', while enhancing golfer comfort and connectivity and lowering the cost of ownership for your facility.

- Industry - Leading Factory Direct Fleet Service

- Classy Body Styling & Premium Accessories

- Ergonomic Engineering that Emphasizes Player Comfort and Functionality

- Lowest-Maintenance and Cost of Ownership Golf Car in the Industry

Our primary goal at CSM is to look out for the best interests of your Club while maintaining your out-of-pocket maintenance costs and eliminating down time. I want to emphasize how confident we are you and your members' needs and expectations will be met and far exceeded with our world class vehicles and the personal touch of excellence from our Industry-Leading Service.

In closing, please know that Cart Star Motors and Yamaha is not only committed to earning your trust and your business on this deal, but building a long-term partnership as your golf car and utility fleet provider for years to come

Regards,

**Brian Jones**

*Cart Star Motors*

brian.jones@cartstarmotors.com



# THE YAMAHA STORY

## OUR CARS

The best cars in the industry and the only company with four power options

Drive2 PowerTech AC Electric
Drive2 DC Electric
Drive2 EFI Gas
Industry-First Drive2 QuieTech EFI
UMAX I EFI Utility
UMAX II EFI Utility
UMAX II AC Electric Utility

## OUR STATS

2,511+ Courses have switched to Yamaha in the past 9 years
# 1 Rated in Satisfaction, Customer Support, and Reliability *
97% Brand Loyalty **
94% Customer Retention Rate
OUR AFFORDABLE GPS SOLUTION
Track and control your fleet.
Drive Profits. Reduce Costs.
Work Smarter.



# COMPANY PROFILE

Cart Star Motors (CSM) is located in California, Southern Oregon and Northern Nevada. CMS is a proud distributor of Yamaha Golf Car products, and provides service throughout this region.

For more information, please visit Yamaha on the web at:
www.yamahagolfcar.com

Our Team
Owner: **Joe Guerra**
General Manager - California: **Doug Dahl**
General Manager - Golf Car: **Brian Jones**
District Sales Manager: **Brian Jones**
Customer Service: TBD
Factory Service Provider: TBD

Headquarters & Manufacturing Plant
Yamana Golf-Car Company
1000 GA Hwy. 34 East
Newnan, GA 30265

Corporate Headquarters
**Cart Star Motors**
2438 Radley Court
Hayward, CA 94545





# OUR PARTNERS

Affiliate Member:

Official Golf Car:

Silver Sponsor:

Member:

Title Sponsor, Pro-Am:

Southern California Section PGA
*10 other PGA sections Nationwide*

Section Sponsor:





# PROPOSED EQUIPMENT AND ACCESSORIES
## 2021 Yamaha Drive2 AC (Fleet) Golf Car

### Standard Vehicle Equipment

Description

Trojan T875 8-Volt Battery, Set of (6)

- Industry-leading battery configuration comes standard with OEM HydroLink single-point watering system

3.7 hp NEW AC Motor
Cradle-Smooth Rear Suspension
TruTrack II Fully-Independent, Automotive-Style Front Suspension
HybriCore Chassis
Removable Modular Body Panels
Energy-Absorbing (5) MPH Impact-Rated Bumpers
Rack-and-Pinion Steering and Drum Brakes
Enhanced Automotive-Style Dash

### ptional Installed Vehicle Equipment

Description

Color: Moonstone Metallic
Dual Sand Bottles
Custom Club Logo on Front of Car
Adhesive Information Holder
Polycarbonate Clear, Hinged Windshield
Color-Matched Custom Number Decals (2 per car, #'s 1-80)
USB Charging Ports
Quick Clip Information Holder
Custom Seats with Course Name Embroidered in Script
Custom Aluminum 10" Wheels
Custom Bag Cover Beige with Course Logo

MOONSTONE MICA METALLIC BLUESTONE SUNSTONE

GARNET ARCTIC DRIFT MATTE EMERALD CARBON

GLACIER





2020 Yamaha Drive2 EFI (Fleet) Golf Car

## Standard Vehicle Equipment

Description

Yamaha-Built 357 cc EFI Gas Engine
TruTrack II Fully-Independent, Automotive-Style Front Suspension
Cradle-Smooth Rear Suspension
HybriCore Chassis
Removable Modular Body Panels
Sentry Wraparound Protection System w/ 5 MPH-Rated Bumpers
Rack-and-Pinion Steering and Drum Brakes
Enhanced Automotive-Style Dash
ClimaGuard Top with Dual Rain Gutters

## ›tional Installed Vehicle Equipment

Description

Color:
Dual Sand Bottles
Custom Club Logo on Front of Car
Polycarbonate Clear, Hinged Windshield
Wheel Covers (4)
USB Charging Ports



# PROPOSED EQUIPMENT AND ACCESSORIES

## 2020 Yamaha UMAX ONE EFI Range Vehicle

## Standard Vehicle Equipment

Description

Yamaha-built 402 cc EFI Gas Engine
TruTrack II Fully-Independent, Automotive-Style Front Suspension
Swing arm with DUAL RATE coil springs over hydraulic shock absorbers
HybriCore Chassis
Self-compensating double reduction helical rack-and-pinion steering
Self-adjusting mechanical, rear-wheel drum brakes
Cargo Bed Dimensions: **33.2" x 45.9" x 11.9"**
300 lb cargo bed load capacity
20" tires

## ptional Installed Vehicle Equipment

Description

Color: **White**
Universal Picker Adapter
Steel Range Cage
Fender Flares
USB Ports
In-Dash Fuel Gauge / Hour Meter





# A Utility for Every Challenge

## UMAX ONE

With six color options, luxurious bucket seats, under hood storage compartment, and large 20" tires, you can see the difference when power, performance, versatility, and comfort matter.

## UMAX TWO

Just as strong, resourceful, and reliable as the UMAX ONE, but additionally equipped with an even more substantial cargo bed. Measuring in at 41" x 46" x 12," your maintenance team will have even more volume to work with.

## UMAX RANGE PICKER

Outfitted with a strong diamond-webbed steel cage and an impact-resistant front windshield, discover the same Range Picker you already know and love—but this time, with an upgraded 402cc engine for premium torque and power.

## UMAX FAIRWAY LOUNGE

Servicing your customers is now easier than ever with our fully-redesigned Fairway Lounge. Featuring more ice chests, a sliding snack tray, and more, your guests will always have everything they need. We've also enhanced the shopping experience with slanted shelves perfectly equipped for displaying merchandise of your choice.



CartStar
Motors

COLOR OPTIONS

TMR00016







 

CartStar
Motors

EQUIPPED WITH
FUSIONFIT™

## BACK OFFICE

- Manage your tee sheet in the clubhouse, in the cloud, or wherever you choose.
- Manage your entire operation, including the golf shop, cart barn, restaurant, and maintenance building from your favorite mobile device with our web-based system.
- Integrated leasing with Yamaha's in-house financing, enabling a seamless transaction.
- Built-in point of sale system allows you to manage your customer's information and inventory easily.

## Car Control

- Set geo-fence zones to control speed and car location on the golf course. *(DC Only)*
- Use the shutdown feature to prevent losses by day, and the lockdown feature for better security overnight. *(DC Only)*
- Monitor amp hours and car battery conditions automatically to improve fleet rotation and maximize battery life. *(DC Only)*
- Monitor pace of play to assist with scheduling rounds and optimize marshal activity.
- Use the car tracking feature to show car location history.

## Player App

If you have a Yamaha fleet, then we've already built your mobile app for you. Activating the app for your course is easy and convenient, and the mobile-based software allows your players to navigate their round no matter where they are on the course or in the game. The YamaTrack Player App assures player support is just around the corner, so they can spend more energy on their game.

Customize your golf course's mobile player app with your unique club logo.

Accurate course diagrams and the GPS Precise Distance to Pin feature enables players to gauge their shots for more holes-in-one than ever before.

Food and beverage ordering from the course means a satisfying meal or refreshing beverage is never far away.



YTX
YAMAHA
MENU
HOLE 1
PAR 5
525
GPS yardage with interactive touch screen
Flyover auto-start at each hole with distance to hazards
Fairway/green toggle with shot distance and on-screen scorecard
Remote food and beverage ordering and customizable on-screen advertising

TMR00019



# EQUIPMENT MAINTENANCE SCHEDULE

While CSM maintains a network of reliable service providers that are willing and able to assist you at any time, the following are best practices that will ensure that your golf car fleet stays in optimum working condition, cutting down on the need of service assistance:

**Daily Safety Checklist:**

- Visually inspect all equipment for damage. Be sure all nuts, bolts, and screws are tight.
- Insure that all warning and instruction labels are on equipment and in good condition.
- Check equipment for proper and safe operation.
- Maintain a proper tire pressure of 18 psi for gas cars, and 22 psi for electric cars.
- Check drive unit, transmission, engine, and fuel system (gasoline equipment) for leaks.

**Daily Performance Inspection:**

- *Forward/Reverse Switch:* Check for proper operation.
- *Brakes:* Be sure brakes function properly
- *Parking Brake:* When latched, the parking brake should lock the wheels and hold the vehicle stationary.
- *Reverse Buzzer:* The reverse buzzer will sound as a warning when the forward/reverse handle or switch is in the reverse position.

**Daily Maintenance:**

- Remove trash from bag well, floorboard, dash compartment, and drink holders.
- Wash exterior of equipment, including seats and bag well. Do not pressure wash.
- Wash engine compartment. Avoid all electrical components and connections. Do not pressure wash.
- Keep equipment clean with damp cloth.
- Change or repair flat tires.
- *Fuel:* Check fuel level.
- *Engine:* Check for proper engine oil level.
- *Battery:* Check battery post; wires should be tight and free of corrosion, and battery should be fully charged.

**Monthly Maintenance:**

- *Engine:* Check engine cooling air intake; clean if necessary. Visually inspect the unshrouded area around the engine exhaust for grass and debris; clean if necessary.
- *Tires:* Check air pressure and adjust as necessary.